IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) CR. No. 03-094S |
| | ) |
| ANTRON RUSSELL | ) |

**GOVERNMENT'S OBJECTION TO**
**DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE**

Comes now the United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney, and Kenneth P. Madden, First Assistant U. S. Attorney, and hereby objects to the Defendant's Motion For Downward Departure for the reasons stated in the accompanying memorandum.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

Kenneth P. Madden

KENNETH P. MADDEN
First Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on the 18th day of July, 2005, I mailed a true copy of the Within Government's Objection To Defendant's Motion For Downward Departure, ordinary mail and postage prepaid, to:

Edward C. Roy, Esq.
Assistant Federal Defender
Office of the Federal Defender
10 Weybosset Street, Suite 300
Providence, RI 02903

[signature]

18 12
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CR. No. 03-094S |
| | ) | |
| ANTRON RUSSELL | ) | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE**

Defendant Antron Russell (Defendant or Russell) has moved this Court to depart downward from the Sentencing Guidelines (the guidelines or USSG) range set forth in the presentence report (PSR). As grounds, Russell raises three arguments: 1) he demonstrated an extraordinary acceptance of responsibility in that he agreed to have his sentence determined, in part, on the basis of 72.5 grams of uncharged crack cocaine; 2) the disparity in the sentencing guidelines between cocaine powder and crack cocaine; and 3) a mandatory minimum sentence of ten years would satisfy the concerns of 18 U.S.C. § 3553.

In light of United States v. Booker,125 S.Ct 738 (2005), the guidelines are no longer mandatory in terms of their application by District Courts. However, Booker dictates that District Courts must consult the guidelines and must take them into account when sentencing. Compliance with Booker necessitates that guidelines calculations be prepared by the U. S.

Probation Officer. It also necessitates that the Court perform an analysis, in the appropriate case, as to whether a downward, or upward, departure is warranted. As was the case previous to the Booker decision, District Courts must also consider those factors set forth in 18 U.S.C. § 3553(a), including: the applicable guidelines range; the nature, seriousness and circumstances of the offense; the history and characteristics of the defendant; protection of the public; deterrence to criminal conduct; the need to promote respect for law and provide for just punishment; the needs of the defendant for educational training, vocational training, medical care and other correctional treatment; the need to avoid unwarranted disparities among similarly situated defendants; and restitution concerns.

In terms of a guidelines analysis, pre-Booker case law still applies. Whether the guidelines are mandatory or advisory, such case law interprets and explains the guidelines. Each guideline applies to a heartland of typical cases. United States v. Carrion-Cruz, 92 F.3d 5, 6 (1st Cir. 1996). A District Court has discretion to depart from the guideline range if the Court finds that there exists an "aggravating or mitigating circumstance of a kind, to a degree, not adequately taken into consideration" by the Sentencing Commission in formulating the guidelines. 18 U.S.C. § 3553(b). However, not every mitigating or aggravating circumstance warrants a departure. United States v. Bogdan, 284 F.3d 324, 327 (1st Cir. 2002); United States v. Vasquez, 279 F.3d 77, 80 (1st Cir. 2002), and the guidelines "place essentially no limit on the number of potential factors that may warrant a departure." Burns v. United States, 501 U.S. 129, 136-137, 111 S.Ct. 2182, 2186 (1991).

The guidelines list several factors which are forbidden and cannot be used as grounds upon which to base a guidelines departure. Other factors are described as "encouraged" or

"discouraged." If an encouraged factor is present, the Court may base a guidelines departure decision on that factor if the applicable guideline has not already taken it into consideration. If a discouraged factor is present, or the encouraged factor has already been taken into account by the guideline, the Court may depart under the guidelines only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If the particular factor is not mentioned in the guidelines, the Court must decide whether the factor is sufficient to take the case out of the heartland. A departure based on an unmentioned factor will be "highly infrequent." Koon v. United States, 518 U.S. 81, 96, 116 S.Ct. 2035, 2045 (1996); United States v. Dethlefs, 123 F.3d 39 (1st Cir. 1997).

Extraordinary Acceptance of Responsibility:

While Russell terms his decision to have his sentence calculated on the basis of the offense of conviction and three uncharged deliveries of crack cocaine as an extraordinary acceptance of responsibility, the government contends his decision was nothing more than resignation to the inevitable.

As noted in the prosecution version, prior to his arrest on March 8, 2003, Russell made three sales of crack cocaine totaling 72.5 grams to an undercover Special Agent of the Drug Enforcement Administration (DEA) during the period of November 21, 2002 through January 22, 2003. The Assistant U. S. Attorney assigned to this matter was not aware of this particular investigation until after Russell was indicted on October 8, 2003 for the March 8, 2003 offense. On December 24, 2003, copies of DEA reports and copies of the audio and video tapes made during these three uncharged sales were provided to defense counsel. The Assistant U. S. Attorney certainly asked Russell's counsel whether Russell wished to disposed of all matters in

one proceeding through the admission of relevant conduct. Russell obviously agreed.

Russell's decision clearly was made in his own self-interest and a resignation to the inevitable. First, in the event of a plea or finding of guilty, and whether Russell admitted the relevant conduct or not, the government had an obligation to advise the Court of the existence of these offenses for which the defendant could be prosecuted, particularly where these offenses were of a similar nature and involved the identical substance as the offense of conviction. Second, once advised of these offenses, it is more likely than not that the Court would have considered such offenses as relevant conduct, whether or not Russell admitted the same. Third, it would have been futile for Russell to contest the existence of this relevant conduct considering the strength of the evidence, i.e., sales to an undercover DEA Special Agent recorded on audio and video tape. Finally, had Russell not admitted the relevant conduct, he would have been prosecuted on the three undercover sales. A second and subsequent prosecution could have had adverse consequences for Russell. If convicted, a fully or partially consecutive sentence could have been imposed. The Bureau of Prisons (BOP) would have transported Russell back to Rhode Island, a process likely to involve several weeks and several stops at BOP facilities along the way. An additional criminal conviction might have resulted in a change of facility assignment, including one of a higher security level. During his return to Rhode Island, Russell would likely have lost both his bunk assignment and his work assignment. As the Wyatt Detention Facility is an "awaiting trial " facility for federal prisoners, the availability of programs in comparison to those at BOP facilities for sentenced prisoners is markedly less.

In the best light, the benefit to the government and the benefit to Russell are of equal value. This ground should be rejected.

Crack Cocaine versus Powder Cocaine and the 18 U.S.C. § 3553 factors:

Russell, citing to a 2002 Sentencing Commission report to the Congress that the 100:1 ratio between crack cocaine and powder cocaine is unjustified, argues that this factor and the factors listed in 18 U.S.C. § 3553 call for a mandatory minimum sentence of ten years and no more. The government contends that a sentence at the low end of the guideline range is an appropriate sentence.

While the 100:1 ratio established by Congress has been subject to extensive criticism, including Sentencing Commission reports dated 1995, 1997 and 2002, Congress has refused to modify its position. Further, the First Circuit Court of Appeals has rejected constitutional challenges to the crack cocaine versus powder cocaine sentencing scheme. See, United States v. Eirby, 262 F.3d 31 (1st Cir. 2001); United States v. Lewis, 40 F.3d 1325 (1st Cir. 1994). It should be left to Congress, not the Courts, to modify or even abrogate in its entirety the sentencing distinctions between crack cocaine and powder cocaine. See, e.g. United States v. Tabor, 365 F.Supp.2d 1052 (D. Nebraska 2005).

The cases cited by Russell are not supportive of Russell's request for a ten year sentence.[1] In United States v. Williams, 2005 WL 1378764 (M.D. Florida, May 5, 2005), the defendant's classification as a career offender after he sold a total of 34.8 grams of crack resulted in a guidelines range of 360 months to life imprisonment. The Court imposed a sentence of 204 months. The Court's decision did not address the crack versus powder cocaine issue. In United States v. Simon, 361 F.Supp2d 35 (E.D.N.Y. 2005), a case involving 660 grams of crack and a

---

[1] The government has been unable locate the decision cited as United States v. Harris, 2005 U.S. Dist. LEXIS 3958 (D.D.C. March 7, 2005).

firearm, the defendant's guidelines range was calculated at 324 to 405 months. The Court imposed a sentence of 262 months. In United States v. Smith, 359 F.Supp.2d 771 (E.D. Wisconsin 2005), acting upon a substantial assistance motion filed by the government, the Court departed downward to 18 months from a guidelines range of 121 to 151 months. The facts of these cases are much different than those of Russell.

In reviewing the factors listed at 18 U.S.C. § 3553, the government makes the following points:

a. Russell is no stranger to the police. At age 23, he had amassed 15 adult arrests with 12 of those arrests resulting in convictions. Though some of these convictions were for motor vehicle offenses, a number of the convictions were for offenses far more serious: assault on a state trooper, possession of a firearm, misdemeanor assault, obstructing a police officer, felony possession of a controlled substance and misdemeanor possession of a controlled substance. Under the sentencing guidelines, Russell accumulated 13 criminal history points - a criminal history category VI.

b. Russell upgraded his level of criminal activity from assaults and drug possession to dealing in crack cocaine, and not just once, but four separate occasions.

c. Crack cocaine is a dangerous form of cocaine with no medical value.

d. The total quantity of crack cocaine dealt by Russell was 233.74 grams, or over one-half pound.

e. Short terms of imprisonment and probation did nothing to protect the public from further crimes. Russell chose the path of a recidivist.

f. In attempting to avoid arrest, Russell struck three police officers with his vehicle. His

actions certainly had the potential to cause serious bodily injury or death to the police officers and others in the area of the restaurant.

g. Russell's family is by far more positive than many other defendants who appear before this Court for sentencing. Further, his physical, mental and emotional health are all good.

This is not an extraordinary case. The motion for downward departure from the guidelines should be denied. The Court should re-impose the sentence of 235 months.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

KENNETH P. MADDEN
First Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on the 18th day of July, 2005, I mailed a true copy of the Within Government's Memorandum In Support Of Its Objection To Defendant's Motion For Downward Departure, ordinary mail and postage prepaid, to:

Edward C. Roy, Esq.
Assistant Federal Defender
Office of the Federal Defender
10 Weybosset Street, Suite 300
Providence, RI 02903